UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Progressive Northern Insurance Company,<br><br>        Plaintiff,<br><br>v.<br><br>Kennedy Mitchell, Angeline Gadson, Clarke Taylor, and Clyde Harriot,<br><br>        Defendants. | Civil Action No. 9:20-cv-673-BHH<br><br>**Opinion and Order** |

This matter is before the Court on Defendants Kennedy Mitchell, Angeline Gadson, Clarke Taylor, and Clyde Harriot's (collectively "Defendants") motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or as an exercise of the Court's discretion to decline jurisdiction pursuant to 28 U.S.C. § 2201. (ECF Nos. 8, 12, 13, 14.) For the reasons set forth in this Order, the motions are denied.

## **BACKGROUND**

Progressive Northern Insurance Company ("Progressive") issued a personal automobile insurance policy to Kennedy Mitchell, policy number 930226902, with effective dates of June 3, 2019 to December 3, 2019 (hereinafter the "Policy"). The Policy lists a 2007 Dodge Charger and a 2001 Ford Expedition as insured vehicles. For each insured vehicle, the Policy provides bodily injury liability coverage with limits of $25,000 per person and $50,000 per accident and property damage liability coverage with limits of $25,000 per accident. The Policy also provides uninsured and underinsured motorist ("UIM") coverage up to the same bodily injury and property damage limits and medical

1

payments coverage with limits of $500 per person. The Policy obligates Progressive to provide a defense to persons qualifying as an "insured" for claims that fall within the Policy's coverage and are not otherwise excluded. Under the terms of the Policy, Progressive may deny coverage for an accident or loss if the named insured or other persons seeking coverage engaged in fraudulent conduct, or concealed or misrepresented material facts, in the presentation of a claim for insurance proceeds.

Progressive learned of an automobile accident that allegedly occurred on October 3, 2019. Defendant Mitchell was driving a vehicle listed on the Policy and carrying Defendants Taylor and Harriot as passengers. Defendant Mitchell contends he made a right-hand turn and struck a vehicle operated by Defendant Gadson that was stopped at a stop sign. (*See* ECF No. 8-2 at 2, 6, 10 (underlying state court filings describing alleged accident).) Based on its investigation, Progressive concluded the collision either did not occur or was intentionally staged by Defendants.

On February 7, 2020, Progressive initiated this declaratory judgment action to determine its obligations under the Policy in light of the alleged collision. Progressive seeks four declarations: two regarding the Policy's coverage for a collision that was not an "accident" and two regarding the provision of insurance benefits under the Policy in light of alleged fraudulent insurance claims arising out of the purported collision. (*See* Compl. ¶¶ 26–42, ECF No. 1.)

Defendants Gadson, Taylor, and Harriot subsequently filed, on March 2, 2020, underlying tort suits seeking damages for bodily injury against Defendant Mitchell. (ECF No. 8-2.) Defendant Mitchell filed a defamation suit against Progressive on April 6, 2020, alleging that an agent of Progressive falsely accused Defendant Mitchell of staging the

auto accident in the Estill Public Library in the presence of a number of individuals unconnected to the insurance claim or Progressive's business. (*Id.*) Defendants Gadson, Taylor, and Harriot each filed a similar defamation suit against Progressive on April 7, 2020.

Defendant Mitchell filed a motion to dismiss for lack of subject matter jurisdiction, for failure to plead fraud with specificity, and for the Court to abstain from exercising jurisdiction on April 21, 2020. (ECF No. 8.) Defendants Gadson, Taylor, and Harriot each filed motions to dismiss asserting that the Court lacks subject matter jurisdiction and that the Court should decline to exercise its discretionary jurisdiction over this declaratory judgment action. (ECF Nos. 12, 13, 14.) The motions have been fully briefed, the matter is ripe for disposition, and the Court now issues the following ruling.

## **LEGAL STANDARDS**

**Subject Matter Jurisdiction**

When a party challenges the factual basis for a federal court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of proving the district court possesses subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982)). In considering a Rule 12(b)(1) motion to dismiss, the district court is to regard the pleadings as mere evidence on the issue of subject matter jurisdiction and may consider evidence outside the pleadings without converting the proceeding into one for summary judgment. *Id.* (citing *Adams*, 697 F.2d at 1219; *Trentacosta v. Frontier Pacific Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987)). "The Declaratory Judgment Act provides that, '[i]n a case of actual controversy

3

within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting 28 U.S.C. § 2201(a)). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Federal district courts have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. 28 U.S.C. § 1332(a)(1).

**Failure to State a Claim and the Heightened Pleading Standard for Fraud**

A motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) "challenges the legal sufficiency of a complaint, considered with the assumption that the facts alleged are true." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (internal citations omitted). When a claim sounds in fraud the plaintiff must satisfy both Rule 8(a)'s plausibility requirement and Rule 9(b)'s heightened standard to plead fraud with particularity. *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2004 n.6 (2016).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

4

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556)). Although the allegations in a complaint generally must be accepted as true, that principle "is inapplicable to legal conclusions," and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citations and quotation marks omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Still, Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Colon Health Centers of Am., LLC v. Hazel*, 733 F.3d 535, 545 (4th Cir. 2013) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). "A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss . . . ." *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010).

Rule 9(b) imposes a heightened pleading standard on fraud claims, under which a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The purposes of Rule 9(b) include "providing notice to a defendant of its alleged misconduct," "preventing frivolous suits," "eliminating fraud actions in which all the facts are learned after discovery," and "protecting defendants from harm to their

5

good will and reputation." *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 456 (4th Cir. 2013) (quotation marks and modifications omitted).

**Discretionary Jurisdiction Over Declaratory Judgment Actions**

"[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). "It is well established that a declaration of parties' rights under an insurance policy is an appropriate use of the declaratory judgment mechanism." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998). Declaratory judgment actions to ascertain liability coverage typically involve a separate proceeding, often in state court, by a tort plaintiff against the insured defendant. Federal courts have not held that such declaratory judgment actions inherently create undue entanglement with the underlying state tort actions. "Such a rule would . . . be flatly inconsistent with controlling Supreme Court precedent approving the use of declaratory judgment actions by insurers in precisely that situation." *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994). Moreover, "a District Court cannot decline to entertain such an action as a matter of whim or personal disinclination." *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). Rather, the Court considers four factors ("*Nautilus* factors") in deciding whether to exercise its discretionary jurisdiction or to abstain:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending;[] (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law"[; and (iv)] whether the declaratory judgment action is being used merely as a device for "procedural fencing"— that is, "to provide

>another forum in a race for res judicata" or "to achiev[e] a federal hearing in a case otherwise not removable."

*Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996) (quoting *Nautilus*, 15 F.3d at 377) (modification in original). "The critical question . . . is whether–on the facts of this case–the additional considerations of federalism, efficiency, and comity . . . are sufficiently compelling to justify a refusal to exercise jurisdiction, despite the obvious utility of the declaratory relief sought." *Nautilus*, 15 F.3d at 377.

## DISCUSSION

### A. Subject Matter Jurisdiction

Defendants do not challenge the fact that complete diversity is present in this action, but they assert that it is not possible for the jurisdictional amount in controversy threshold to be met based on the claims in the underlying tort actions. Progressive argues that the amount in controversy requirement is satisfied and the Court possesses diversity jurisdiction over Progressive's declaratory claims. The Court agrees with Progressive.

The amount in controversy in an action of this type is measured by the total potential coverage exposure for the insurer arising out of the underlying automobile accident. *See Mfgrs. Cas. Ins. Co. v. Coker*, 219 F.2d 631 (4th Cir. 1955) (allowing a declaratory judgment action to proceed where the aggregate of the underlying claims exceeded the jurisdictional amount). Defendants Gadson, Taylor, and Harriot (collectively "Claimants") have filed three state court actions against Defendant Mitchell, Progressive's insured, and Progressive's contractual duty to defend is triggered three times. The Claimants have not limited their damages in the underlying tort cases and they seek actual damages, costs, and punitive damages. (*See* ECF No. 8-2 at 3, 7, 11.) Accordingly, Progressive's exposure includes its duty to defend Mitchell in three tort suits and to

7

indemnify him for any actual damages, costs, and punitive damages, up to the limits of coverage provided in the Policy, awarded to the Claimants in each case.

Moreover, the Policy's UIM limits are also properly considered in the amount in controversy because they are part of Progressive's overall indemnification exposure. Progressive could be liable for UIM amounts if Defendants Taylor and Harriot demonstrate that their damages exceed the Policy's liability limits. Thus, the maximum exposure for which Progressive could be liable in this case includes:

(1) the cost to defend Defendant Mitchell in three tort suits;

(2) the Policy's $50,000 bodily injury liability limits;

(3) the Policy's $500 per person medical payments coverage limits; and

(4) the Policy's $50,000 bodily injury UIM limits.[1]

The amount in controversy exceeds $75,000. *See*, *Morgan v. Liberty Mut. Ins. Co.*, 261 F. Supp. 709, 712 (D.S.C. 1966) ("[T]he 'amount in controversy' for jurisdictional purposes [is] the maximum amount for which the insurer could be held liable under the policy."). Therefore, Defendants' motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) are denied.

### B. Sufficiency of Progressive's Allegations

Defendant Mitchell asserts that Progressive's complaint should be dismissed because it fails to allege fraud with the requisite specificity and particularity under Rule 9(b). The Court disagrees and finds that the allegations in Progressive's complaint state

---

[1] Progressive contends that the Policy's $25,000 property damage caps, both for liability limits and UIM limits, should be included in the calculation of its overall coverage exposure. Defendants argue that property damage is not part of the amount in controversy because Claimants' state court actions do not include claims for property damage. (*See* ECF No. 8-2.) However, the disagreement is immaterial because Progressive's coverage exposure exceeds the jurisdictional requirement without including coverage for property damage.

claims upon which relief may be granted and provide Defendants with sufficiently specific and particular notice of the alleged fraudulent conduct.

Progressive seeks several declarations in this matter. The first two declarations involve a determination that no accident occurred that would bring the claims within the Policy's scope of coverage. (Compl. ¶¶ 26–34.) The Court finds that Progressive has properly pled that an accident did not occur or was intentionally staged by Defendants. (*See id.* ¶ 16.) The Court could determine whether an accident occurred or was intentionally staged, thereby deciding the first two declarations, apart from any conclusions about fraud. Thus, Defendant Mitchell's assertion that these causes of action fail to state a claim because of the heightened pleading standard imposed by Rule 9(b) is inapposite. *See Baltimore County v. Cigna Healthcare*, 238 Fed. App'x 914, 922 (4th Cir. 2007) (holding that where a complaint raises allegations of both fraudulent and non-fraudulent conduct, "only the fraud allegations of a complaint must satisfy the heightened pleading standards of Rule 9(b)").

The last two declarations sought in this matter address an alleged fraudulent claim for insurance benefits arising out of the purported collision. (Compl. ¶¶ 35–42.) The Court finds that these causes of action are sufficient to survive a motion to dismiss because the complaint puts Defendants on notice regarding the specific fraudulent conduct alleged— to wit, their submission of a fraudulent insurance claim. (*See* Compl. ¶ 40 ("Some or all of these Defendants knowingly provided false information regarding the facts of the purported collision to Progressive in making claims under the Policy by submitting a demand to Progressive for coverage under the Policy for the purported collision.")); *see also Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019) (stating a court

should be hesitant to dismiss a complaint under Rule 9(b) if the defendant has been made aware of the particular circumstances for which it will have to prepare a defense, and if the plaintiff has substantial pre-discovery evidence of those facts). Progressive's third and fourth declarations incorporate by reference each earlier allegation of the complaint. (Compl. ¶¶ 35, 39.) Accordingly, these causes of action include all other factual allegations of the complaint for purposes of Rule 9(b). *See Adkins v. Crown Auto, Inc.*, 488 F.3d 225, 232 (4th Cir. 2007) (concluding that any earlier allegations "incorporated by reference" into a fraud claim are properly considered within a court's Rule 9(b) analysis regarding the sufficient particularity of a fraud pleading). The facts that combine to allege fraud are:

> (1) the purported October 3, 2019 collision on Sprayfield Road in Estill, South Carolina did not occur or was intentionally staged (Compl. ¶¶ 13, 16);
>
> (2) Defendants conspired together to stage or claim a collision that did not occur to recover insurance benefits from Progressive (Compl. ¶ 24);
>
> (3) the collision was not an accident that would fall within the scope of the Policy's coverage (Compl. ¶¶ 29, 33); and
>
> (4) Defendants knowingly provided false information regarding the facts of the purported collision (*i.e.*, that it occurred and/or was an accident) in submitting a demand to Progressive for coverage under the Policy (Compl. ¶ 40).

The Court concludes, based on these allegations, that Defendants are on notice that the alleged fraud involves all statements to Progressive in pursuit of insurance benefits pertaining to the purported October 3, 2019 collision. Therefore, the motion to dismiss

premised on the insufficiency of Progressive's allegations is denied.

### C. Discretionary Abstention

Defendants assert that the Court should decline to exercise jurisdiction over this declaratory judgment action because South Carolina has a strong interest in having its courts decide the issues at hand, South Carolina state courts can resolve the issues more efficiently, and permitting this action to proceed will result in unnecessary entanglement between this Court and the state courts adjudicating the underlying defamation cases. However, the Court finds that the *Nautilus* factors do not weigh in favor of abstention and the Court will retain jurisdiction over this case.

First, South Carolina does not have a strong interest in having its courts decide the issues raised by this action. The Fourth Circuit has stated that a State's interest in having its courts decide a controversy is not particularly significant when the state law issues are standard and unlikely to break new ground. *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 414 (4th Cir. 2004). "[Q]uestions of state law raised in [a] federal action are not difficult or problematic" when "they involve the routine application of settled principles of insurance law to particular disputed facts." *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 211 (4th Cir. 2006). In this case, the questions of South Carolina insurance law concerning application of the Policy are settled and routine. The dispositive inquiry is whether an accident occurred and what information Defendants presented to Progressive regarding the purported collision. South Carolina does not have a stronger interest in resolving those questions than this Court and the first *Nautilus* factor weighs toward retaining jurisdiction.[2]

---

[2] Although the factual questions at issue here significantly overlap with those presented in the defamation suits, Defendant Mitchell's assertion that the coverage issues raised here will be fully resolved by his defamation suit is incorrect. This Court will still need to make legal conclusions regarding the applicability of the Policy regardless of which court resolves the central factual questions first.

11

Second, the issues raised in this declaratory judgment action can be resolved with equal or greater efficiency in this Court. In *Great American Insurance Company v. Gross*, the Fourth Circuit explained the application of the second *Nautilus* factor as follows:

> In evaluating these efficiency concerns, the Supreme Court has directed us to focus primarily on "whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding[s]" that are already "pending in the state court[s]." *Brillhart*, 316 U.S. at 495, 62 S. Ct. 1173. This in turn requires careful inquiry into "the scope of the pending state court proceeding[s]," including such matters as "whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding."

468 F.3d at 211–12 (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)) (alterations in original). It goes without saying that resolution of the factual inquiry as to whether an accident occurred can be resolved in this Court just as well as in the state courts. The coverage issues raised in this action are not directly raised in any of the underlying state tort actions or defamation actions. Progressive cannot assert the coverage matters into the underlying tort cases, where it is not a party. Moreover, it would be inefficient to force Progressive to litigate the coverage issues as a permissive counterclaim in each of the four underlying defamation suits when those issues can be fully resolved as to all Defendants' rights in this single, first-filed action. In other words, the claims of all parties in interest to this proceeding cannot be efficiently adjudicated in the state court proceedings and the second *Nautilus* factor counsels toward retaining jurisdiction.

Third, the Court's retention of jurisdiction over this matter will not result in unnecessary entanglement with the state courts. "Entanglement is likely when many of the issues in the declaratory action are also being litigated by the same parties in the

related state court action." *Fenwick Commons Homeowners Ass'n, Inc. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, No. 2:19-CV-00057-DCN, 2019 WL 1760150, at *4 (D.S.C. Apr. 22, 2019). As already noted, there is no pending state case addressing Progressive's obligations under the Policy and the coverage matters raised in this action will not be resolved there. The underlying defamation suits do not involve all of the putative insureds, though each is entitled to advocate for his or her rights under the Policy, if any. For this reason, the instant action and not the underlying tort or defamation actions seems to be the appropriate vehicle for determination of the common factual and legal questions that will affect all parties with respect to insurance coverage. *See* S.C. Code § 15-53-80 ("When declaratory relief is sought all persons shall be made parties who have or claim any interest which would be affected by the declaration . . . ."). Under the unique circumstances of this case, the Court finds it significant for purposes of the entanglement analysis that this action was filed first. A scenario where the same parties are already litigating in a state case issues that are later raised in a federal case is likely to raise more entanglement concerns than the circumstance at hand. *See Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992) ("For the federal court to charge headlong into the middle of a controversy already the subject of state court litigation risks '[g]ratuitous interference with the orderly and comprehensive disposition of [the] state court litigation.'" (quoting *Brillhart*, 316 U.S. at 495) (alterations in original)). Progressive had a right to file this declaratory judgment action in federal court and did so on February 7, 2020. On March 2, 2020, Defendants Gadson, Taylor, and Harriot filed their underlying tort suits. On April 6, 2020, Defendant Mitchell filed his state court defamation action arising out of Progressive's investigation into the alleged accident; he now argues that Progressive "has brought [the

13

instant] action knowing that it will be binding on all four state court [defamation] actions." (ECF No. 8-1 at 9.) The next day, April 7, 2020, the other Defendants filed their defamation actions in state court, two months after Progressive filed this federal case. This is not a case where issues of Progressive's rights or obligations sought to be adjudicated in the federal action are already being litigated by the same parties in a state action. The coverage issue sought to be resolved here is distinct from the alleged liability of Defendant Mitchell pending in the underlying tort suits and the constellation of issues raised in the underlying defamation suits. While the specific factual inquiry into whether the alleged accident never occurred or was staged overlaps with factual determinations to be made in the state cases, the Court finds that this overlap will not result in excessive entanglement between the federal and state courts. Accordingly, the third *Nautilus* factor does not support abstaining from jurisdiction over this matter.

Finally, Defendants concede that this action is not being used as a device for "procedural fencing." (*See* ECF Nos. 8-1 at 9; 12 at 5.) In conclusion, the Court finds that bedrock principles of federalism, efficiency, and comity do not counsel toward abdicating jurisdiction under the circumstances and the motions to dismiss on this basis are denied.

## **CONCLUSION**

For the reasons set forth above, Defendants Kennedy Mitchell, Angeline Gadson, Clarke Taylor, and Clyde Harriot's motions to dismiss or to decline jurisdiction (ECF Nos. 8, 12, 13, 14) are DENIED.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

March 10, 2021
Charleston, South Carolina

14